# Sinnreich, Kosakoff & Messina, LLP
267 Carleton Avenue
Suite 301
Central Islip, New York 11722

*631.650.1200*

*John Ciampoli, Esq., of Counsel*

July 5, 2016

Hon. Joseph F. Bianco
District Court Judge
United States District Court for the Eastern District of New York
Alfonse D'Amato Courthouse
Central Islip, New York 11722

Re:   Submission on behalf of Intervenors, Case No. 16-CV-3527 JFB - ARL

Dear Judge Bianco:

Pursuant to the instructions of the Court on June 29, 2016, we herewith submit this letter application to the Court for intervention on behalf of Dominic J. Macedo, Robert Donno, Mark S. Sauvigne, and Marlene Lobato, pursuant to FRCP 24, and for relief as is more fully set forth herein.

**BACKGROUND**

For the purpose of these applications to the Court Intervenors will rely upon the timeline read into the record and admitted to by the Plaintiff at the conference of this matter on June 29, 2016. The time line provides this Court with the essential facts that will help to decide this case which will be expanded upon herein.

**INTERVENTION**

Your intervenors were parties to two state Court proceedings in Supreme Court, Nassau County, this year in which, *inter alia*, Plaintiff, Pidot's status as a candidate on the ballot of the June 28, 2016 Federal Primary Election for the Republican Nomination for the office of Member of Congress, Third Congressional District of New York, was at issue. Those cases were, Macedo, et al v. Pidot, et anno, Index No. 3124 / 2016, and Pidot v. Macedo & NYS Bd. Of Elections, Index No. 3448 /2016. These actions were, respectively, to invalidate designating petitions and remove Pidot from the ballot, and to validate designating petitions declared invalid by the New York State Board of Elections. The proceedings were heard jointly by the Supreme Court.

As more fully discussed herein, Plaintiff Pidot requested that the State Court place him on the June 28th Primary Election ballot. As the time remaining before the June 28th Primary waned, Pidot made application for an order from the Court setting a separate primary date for him, see EXHIBIT C, Transcript, Vol. 3, p. 388, l. 6, et. seq.. The applications were denied by the Supreme Court, EXHIBIT A.

As noted at the conference of this case, the Intervenors' counsel was served with the Summons and Complaint in this matter, EXHIBIT B.

Your Intervenors, Dominic J. Macedo, Robert Donno, Mark S. Sauvigne, and Marlene Lobato, are citizens of the State of New York and voters in the 3rd Congressional District who duly filed and perfected objections to the Pidot designating petitions. After a hearing, in which Pidot appeared and participated (Pidot offered no defense for his petitions even when the hearing

2

officer held the record open for one full day), the Commissioners of the Board of Elections met and determined that the designating petitions were invalid, see New York State Board of Elections website, http://www.elections.ny.gov/.

Prior to the Board of Elections' hearing the Objectors commenced an invalidating proceeding on or about April 27, 2016, within the fourteen-day Election Law's statute of limitations, Nassau Index No. 3124 / 2016.

The current status of the Intervenors' petition to invalidate the Pidot designating petition is that it was denied by the State Supreme Court, Diamond, J., EXHIBIT A, and is on appeal. Objector Petitioners are in the process of perfecting their appeal to the Appellate Division, Second Department, [we note that the Appellate Division is currently in recess until August 16, 2016 when it is scheduled to hear Elections Appeals].

As is illustrated herein, the Plaintiff in this case complains to this Court of a State Court order in two actions where the Intervenors were / are parties. The decision of this Court could effectively extinguish the Intervenors appellate rights to have the determination regarding the validity of the Pidot designating petition reversed and to have his case dismissed, see Hunter v. Orange County Board of Elections, 11 N.Y.3d 813 (2008).

Moreover, the Intervenors were successful in having the Plaintiff's application for a rescheduled Primary Election to the New York State Supreme Court denied. This is the very same relief that is sought in the Complaint to this Court. Contrary to the all of the sophistry that the Plaintiff advances in his complaint the Intervenor Objectors are very real people whose rights will be prejudiced if this Court grants the Plaintiff the relief he is requesting. Simply put, the Plaintiff found it convenient to leave the Objectors to his petitions out of this case, so that he might attempt to extinguish their rights in this forum.

It is your Intervenors' position that they are indispensable parties to these proceedings pursuant to Rule 19 FRCP. The application to intervene in this proceeding is made pursuant to Rule 24 FRCP.

We believe that intervention should be granted as of right pursuant to FRCP 24 (a), however, alternatively, apply for permission to intervene pursuant to FRCP 24(b) in the event that the Court determines that intervention as of right is not warranted.

Accordingly, Dominic J. Macedo, Robert Donno, Mark S. Sauvigne, and Marlene Lobato, respectfully request that they be accorded intervenor status in this matter, and that they be aligned with the Defendants.

**ROOKER FELDMAN**

Your intervenors respectfully demand that this case be dismissed pursuant to FRCP 41 (b) on the basis of the Rooker Feldman doctrine, see <u>Rooker v. Fidelity Trust</u>, 263 U.S. 413 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983). More particularly, in the era post <u>Exxon Mobil</u>, 544 U.S. 280 (2005), the Plaintiff has failed to meet the requirements of the test advanced by the Second Circuit Court of Appeals in <u>Hoblock v. Albany County Board of Elections</u>, 422 F.3d 77 (2d Cir., 2005).

The Second Circuit's test in <u>Hoblock</u>, supra., requires that Rooker Feldman applies only when four conditions are met:

1. The plaintiff must have been a loser in the state court proceeding.
2. The injury complained of must be caused by the state court's order.

3. The Complaint invites the federal district court to review the state court order, and to reject it.

4. The state court order was rendered PRIOR to the commencement of the proceeding in the district court, see Hoblock, supra, at 85.

The Rooker Feldman Doctrine works to deprive the district courts of subject matter jurisdiction. It is submitted to this Court that Rooker Feldman must be considered as a threshold issue before the Court proceeds with this case.

Historically, the Rooker Feldman Doctrine had been expanded in its scope over the years until the United States Supreme Court rejected the broad interpretation / application of Rooker Feldman in Exxon Mobil v. Saudi Basic Industries Corp., 544 U.S. 280 (2005). In Exxon, supra, the Supreme Court rejected the broad interpretation of Rooker Feldman adopted by the Second Circuit in Moccio v. NYS Office of Court Administration, 95 F.3d 195 (2d Cir., 1996). Post Exxon, supra., the Second Circuit established a new test for application of Rooker Feldman. The rule set forth by the Second Circuit in Hoblock, supra., is far more narrow than the pre Exxon, supra., rule. The Hoblock, supra., test does, however, fit the facts of this case like a glove.

Here, the trigger for Pidot's action was his loss in State Supreme Court. He sought an order in state Court placing him on the June 28th Primary Election ballot. Employing a chameleon-like offensive posture, Pidot took the position that the state Court could, and should, order a primary election (even if it would be held on some other date). Pidot referenced both state [Election Law 3-108 and 16-102(3)] and constitutional rights under federal law ["the Forbes case" Rockefeller v. Powers, 917 F.Supp. 155 (EDNY, 1996), affd, 78 F.3d 44 (2dCir., 1996)] in asserting his claim to Justice Diamond, see EXHIBIT C, Transcript, Vol. 3, pp.

.

5

A review of the facts presented here through the prism of the <u>Hoblock</u>, supra., test, reveals:

1. Pidot lost in state court (certainly, on the very issue raised here), EXHIBIT A, Decision.

2. The state court denied Pidot a place on the June 28th Primary Ballot, and denied him a stayed or "rescheduled" election, EXHIBIT A, Decision, see also, EXHIBIT C, Transcript, Vol. 3, p. 388, l. 6, et. seq.

3. It is inescapable, that Pidot, in this proceeding invites this Court to review Justice Diamond's decision and to enter a contrary order after that review, EXHIBIT E, Decision.

4. This case was not filed until the very eve of the Primary Election, and AFTER the state court handed down its order denying Pidot a Primary Election.

If this Court were to take up the complaint at hand, it would be sitting as an appellate court reviewing the decision and order of the New York State Supreme Court issued by Justice Diamond. Under the Rooker Feldman Doctrine, as applied by the Second Circuit in <u>Hoblock</u>, supra., this is precluded.

Clearly, this case is fully within the ambit of the <u>Hoblock</u>, supra., test. We urge the conclusion that Hoblock, supra., requires that the Rooker Feldman Doctrine be applied here and that the complaint be dismissed due to the fact that this Court does not have jurisdiction over Pidot's Claims.

**COLLATERAL ESTOPPLE / RES JUDICATA / FULL FAITH AND CREDIT**

Even when Rooker Feldman preclusion does not apply, there may still be other applicable bars to the District Court taking jurisdiction over a case. It is respectfully submitted that this matter features such additional preclusive issues which will result in dismissal.

In order to assert a claim pursuant to 42 U.S.C. 1983, a plaintiff must establish that his constitutional rights have been abridged "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory", <u>Sykes v. James</u>, 13 F.3d515, at 519 (2d Cir., 1993); <u>Millar v. Ojima</u>, 354 F.Supp.2d 220, at 226, (EDNY, 2005).

Here, the Plaintiff claims a deprivation of his constitutional rights to equal protection of law, and to free speech and association under the First and Fourteenth Amendments to the Constitution. Before this Court the Plaintiff has asserted that the factual underpinnings of his claim are:

"Plaintiffs are not challenging the constitutionality of the New York Election Law, Rather, Plaintiffs submit the Defendants' denial of Pidot's right to appear on the primary ballot in spite of their ability to do so violates Plaintiffs' Constitutional Rights", Complaint, par. 11.

It was the Supreme Court that denied a primary election to the Plaintiff Pidot. What Plaintiff fails to state is that he requested this very relief from the New York State Supreme Court and was rebuffed in his request. His application to the Court, on the record, included:

Mr. Sweeney: What we have here is an extraordinary circumstance in which **the Court is being asked to potentially violate … the voter rights of citizens to**

7

**pick a candidate for the United States House of Representitives.** I think there's precedent out there.

**And I think we should look at the Forbes, the New York Republican State Committee, a [Circuit] Court of Appeals Case from 1996 [Rockefeller v. Powers, 917 F.Supp. 155 (EDNY, 1996), affd, 78 F.3d 44 (2dCir., 1996)] to kind of establish that**

This is based solely on judicial manipulations of obscure and historically prejudicial ballot excess requirements of New York.as the foundation piece. I think there are alternatives that exist unde the current New York State Election Law * * * The state Board itself, I think, could take the same position that in a subsiquent date and time **a primary election could be held, say, for example in September when they were always held in the past, or in August … or whatever date the Board could, but to deny Mr. Pidot the opportunity to run in a priamry and to deny the voters the choice and right to have a choice and vote here, I think is extraordinary** and I would caution against it and ask that we not do that", EXHIBIT C, Transcript, Vol. 3, pp. 392 – 394 [citations added], emphisis added.

While there was a hodgepodge of federal and state law argued to the state court as authority for not "violat[ing] … the voter rights of citizens to pick a candidate …", EXHIBIT C, Transcript, Vol. 3, p. 392. The arguments mirror the request for relief here, "An order requiring Defendants to hold a primary election . . . as soon as possible [and orde that] eligible Republican voters in New York's Third Congressional District [are] ensured their right to cast a meaningful vote among candidates of their choice", EXHIBIT B, Complaint, prayer for relief, par. 2 & 3, [ ] added.

8

It is most important for this Court to note that Mr. Sweeney NEVER preserved his client's federal rights for the review of this Court, see <u>England v. Louisiana Board of Medical Examiners</u>, 375 U.S. 411 (1964). This failure is fatal to the case Pidot puts forward in this Court. Quite to the contrary of making an "England Reserve" application; Pidot's counsel asserted federal "voters rights" and relied on case law from the Second Circuit Court of Appeals. They were accordingly, adjudicated before Justice Diamond and nothing was preserved for this Court's review.

Justice Diamond's response to the Pidot request for a stayed or rescheduled Priamary was to deny the application, see EXHIBIT C, Transcript, Vol. 3, p. 388, l. 6, et. seq.; EXHIBIT E, Decision, p. 3. Justice Diamond informed counsel, "I don't know what caused the delay. The time that you spent, both of you, whoever brought the appeal was an extraordinary amount of time that went by before an appeal was perfected. Let me tell you this, I'm not going to issue any stay of any elections. That I won't do.", EXHIBIT C, Transcript, Vol. 3, p. 388, l. 6, et. seq.

It is respectfully urged upon this Court to apply the doctrine of Collateral Estopple / Res Judicata to this Civil Rights action, see <u>Allen v. McCurry</u>, 449 U.S. 90 (1980); <u>Gill v. Stella</u>, 845 F. Supp.94, at 100 (EDNY, 1994). This Court should give the same preclusive effect to the state court's decision as would apply under the law of that state, <u>Migra v. Warren City School District</u>, 465 U.S. 75, at 81 (1984); <u>Fuchsberg & Fuchsberg v. Galizia</u>, 300 F.3d 105, at 109, (2d Cir., 2002). The Court should consider the law of New York State, as well as the Plaintiff's invocation of Constitutional Voting Rights before the New York State Supreme Court in determining whether the state court decision and order has the effect of collaterally estopping the current claim by Pidot, see <u>Gammerman v. Board of Elections</u>, 550 F.Supp. 1031 (SDNY, 1982).

9

New York State's law on this subject is very clear. "Collateral Estopple, or issue preclusion, prevents a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against a party." Pinnacle Consultants v. Leucadia National Corp., 94 N.Y.2d 426, 431-432 (2000) internal citations omitted. "It is a doctrine intended to reduce litigation and conserve the resources of the Court and litigants and it is based upon the general notion that is not fair to permit a party to re-litigate an issue that has already been decided against it" Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 445 (1985). "the party seeking to invoke collateral estopple has the burden to show the identity of the issues, while the party trying to avoid application of the doctrine must establish the lack of a full and fair opportunity to litigate", Matter of Dunn, 24 N.Y.3d 699, 704 (2015). We, respectfully ask this Court to apply these principles to this matter.

As was discussed in Hoblock, supra, the Plaintiff in this action had a full and fair opportunity to litigate the identical issue in State Supreme Court. The trial transcript demonstrates the Pidot is now asking this Court to give him exactly what Justice Diamond considered and denied him.

This Court must also consider the inordinate delays in the state court proceedings when determining whether he had a full opportunity to litigate the issues in State Supreme Court, see EXHIBIT C, Transcript, Vol. 3, p. 388. In fact, the single longest delay in the state court proceedings was from May 11th when Justice Thomas Adams dismissed Pidot's validation proceeding until June 13th when his appeal from that order (and the denial of an application to vacate the May 11 order) was perfected. Pidot must be held responsible for the delays that he created. [Even Pidot's motion to vacate was delayed due to the fact that Pidot served a fatally defective and incomplete set of papers himself]. Nothing prevented Pidot from going to the Appellate Division of the Supreme Court on May 11th when his case was dismissed (in fact he could have proceeded with both an appeal and his motion to vacate at the same time).

At all phases of the litigation Plaintiff had the benefit of counsel. Even though he appears here "pro se", he continues to have the advice of counsel, as he was aided in this proceeding by a large Manhattan Law Firm, Paul Hastings, LLP, see EXHIBIT D, mailing label form complaint served on Intervenors' counsel.

This Court must also rebuff any attempt by Pidot to distinguish this case from the applications made to the state court by the addition of a co-plaintiff voter. The voter recruited by pidot to appear in this action is also bound by the res judicata / collateral estopple effect of the state court proceeding, see, Dear v. New York City Board of Elections, 2003 WL 22077679 (EDNY, 2003).

Further, this court should defer to policy set by the New York State Court of Appeals in Hunter v. Orange County Board of Elections, 11 N.Y.3d 813 (2008), see also, Semple v Laine, 121 A.D.3d 798 (2nd Dept., 2014); King v. Board of Elections, 65 A.D.3d 1060 (2nd Dept., 2009), which established the doctrine of impossibility as part of New York's Election Law, wherein an application for relief too close to the date of the election will be denied as impossible and the case dismisses [We acknowlege that Supreme Court did not dismiss the case, which would be a matter for appeal, but the final order has no effective difference in its application.]

The impossibility doctrine is particularly important today, given that the current generation of electronic voting machines requires approxiamtely four weeks of preparation prior to use in an election. The state has a clear interest in not having chaos visited upon the election process by litigants like Pidot. The burden on pidot's rights is slight when compared to the interests of the state in conducting orderly elections for all voters.

It appears beyond any doubt that Pidot fully litigated the question of a "stayed" or rescheduled primary election in state Court. His tactical manuevers delayed the process beyond the point of no return. He asserted federal and state remedies before the State Supreme Court. He delayed the

proceedings to his detriment. The Supreme Court denied him the relief he requested. This Court should not disturb that determination which denied the very requests for relief that are made in this proceeding.

Even though the Supreme Court's order is still subject to appeal by the Intervenors; it can not be said that Plaintiff did not have a full opportunity to advance the very issues he raises here in state court. In fact, he raised these issues and lost. He can not now re-litigate the question in this forum having lost in state court.

We would respectfully demand that this Court dismiss the complaint on the basis of collateral estopple / res judicata and giving full faith and credit to the legal orders, and policies of the New York State Courts.

**FAILURE TO STATE A CLAIM**

In order to state a claim for relief under 42 U.S.C. 1983 the plaintiff needs to allege that there was an intentional act which resulted in the deprivation of protected constitutional rights, Gold v. Feinberg, 101 F.3d 796 (2d Cir., 1996), relying on Powell v. Power, 436 F.2d 84 (2d Cir., 1970.

Nowhere in the complaint to this Court do the plaintiffs allege any action taken that constituted "intentional or purposeful discrimination" Powell, supra., at p. 88, as quoted in Gold, supra., at p. 800. As the Circuit repeated at length in its opinion:

> "Were we to embrace plaintiffs' theory [that willful or knowing conduct is not required to state a claim under § 1983], this court would henceforth be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates

12

of election for all manner of error and insufficiency under state and federal law. Absent a clear and unambiguous mandate from Congress, we are not inclined to undertake such a wholesale expansion of our jurisdiction into an area which, with certain narrow and well defined exceptions, has been in the exclusive cognizance of the state courts.", Gold, supra, at 800, quoting Powell, supra. ,at 86.

In short, the complaint is devoid of anything alleging intentional discriminatory conduct on behalf of anyone, including the State Board of Elections, which is merely complying with a lawful court order from Justice Diamond.

This does not rise to the level required for a cause of action to be successfully plead, see Shannon v. Jacobowitz, 394 F.3d 90 (2d Cir., 2005). Further, Plaintiff had fully litigated the case resulting in that order and has obviously eschewed his appellate remedies in state courts. Plaintiff comes to this Court with patently deficient pleadings and asks this Court to disregard the well-established case law so that he can have his own personal Primary Election at the expense of the taxpayers.

**FAILURE TO EXHAUST STATE REMEDIES**

The Plaintiff took the position in State Supreme Court that he could obtain the very relief he seeks here from that Court. Plaintiff has failed to appeal that decision. As argued hereinabove, this Court may not substitute itself for the Appellate Division.

As the plaintiff has failed to bring an appeal from Justice Diamond's order, his complaint to this Court should be dismissed.

**FAILURE TO JOIN INDISPENSABLE PARTIES**

The Intervenor – Objectors are not the only indispensable parties that the Plaintiffs have failed to join in this proceeding.

The Complaint acknowledges that the date for this Primary Election was set by a court order in United States of America v. State of New York and New York State Board of Elections, Case No. 1:10-CV-1214, see Complaint, par. 9.

Pidot has, however failed to join the State of New York or the United States of America in this, his most recent attempt to alter Judge Sharpe's order.

Further, Plaintiffs have left out each of the three local Boards of Elections who actually administer the Primary and General Elections in their respective portions of the 3rd Congressional District. These Boards are the Nassau County Board of Elections, the Suffolk County Board of Elections, and the Board of Elections in the City of New York (Queens County).

In order to achieve the relief requested, these local Boards should be parties to the action. The New York State Board of Elections owns none of the voting machines used in the Third Congressional District. The New York State Board of Elections does not employ any of the Elections inspectors or other personnel in the Third Congressional District. The New York State Board of Elections does not print or distribute the ballots in the Third Congressional District. Moreover, each local Board is independent of the New York State Board of Elections.

It is respectfully submitted that this Court cannot afford the plaintiff the relief he requests without these indispensable parties included in these proceedings, see FRCP Rule 19. Here, as the

advisory Committee wrote on the 1966 amendments to FRCP Rule 19, "… the case should be examined pragmatically and a choice made between the alternatives of proceeding with the action in the absence of particular interested persons, and dismissing the action", Notes of the Advisory Committee on Rules, 1966 Amendments, Rule 19.

We urge this Court, given the exigencies of this case, and the intentional act of the plaintiffs to exclude these parties, to dismiss the instant Complaint.

**CONCLUSIONS**

We request that this Court consider that the burden placed on Pidot's rights by the Election Calendar was and is slight, compared with the State's interest in efficiently running elections, see generally, Gonsalves v. New York State Board of Elections, 174 F.Supp 191 (EDNY, 2013). Further, we must include in our analysis the fact that Plaintiff is responsible for the delay in getting his case before the Supreme Court. Finally, the great weight of precedent weighs solidly against his case proceeding here.

Accordingly, Intervenors respectfully request an order of this Court, allowing them party status in this case and then dismissing the within Complaint, together with such other, further and different relief as this Court deems to be just and proper.

We thank the Court for its attention to this matter and the courtesies your honor has extended.

Very truly yours,

SINNREICH, KOSAKOFF & MESSINA, LLP

BY:   John Ciampoli, Esq. *Of Counsel*