# LAW OFFICES OF JOSEPH NOCELLA

3972 Franklin Avenue
Seaford, NY 11783
(516) 537-2540
josephnocellajr@gmail.com

July 5, 2016

<u>VIA ECF</u>
Honorable Joseph F. Bianco
United States District Judge
United States District Court
Eastern District of New York
I00 Federal Plaza
Central Islip, NY 11722

                Re:     <u>Pidot v. New York State Board of Elections</u>
                        Docket No. 16 cv 3527 (JB) (ARL)

Dear Judge Bianco:

      Defendant Jack Martins ("Martins") respectfully submits this letter memorandum, in lieu of formal papers, in opposition to Plaintiffs' Complaint seeking: (1) an injunction against Martins' certification in the November 8, 2016 general election as the Republican candidate for Member of the United States House of Representatives for the 3rd Congressional District of the State of New York; and (2) an affirmative injunction directing defendant New York State Board of Elections, and its Directors, Chairs and Commissioners, who were named as Defendants in their official capacities, to schedule and conduct a Republican primary.[1] The Court should deny Plaintiffs' requests for injunctive relief because Plaintiffs cannot meet the standard required for such an extraordinary remedy. In any event, the Court should dismiss the Complaint for lack of jurisdiction for failure to exhaust State remedies and because an appeal of Justice Diamond's decision validating Plaintiff Pidot's nominating petitions has been filed. If the Appellate Division reverses the decision below, Plaintiffs' claim are moot.

      Martins is suffering potentially irreparable harm from the mere pendency of these proceedings, and would suffer even greater harm if the Court granted an injunction ordering a primary later this summer. Martins' Democratic opponent is now free to campaign and to raise funds to win the general election, pursuant to federal election laws and rules regulating candidates' conduct in such general, as opposed to primary, elections. Martins, however, is not only burdened by the expense, inconvenience and distraction of the instant proceedings, and the possibility of a late summer primary, but he is also limited by a different set of federal election laws and regulations because he has not been certified as the Republican candidate for the general election.

---

[1] The Complaint also seeks a declaratory judgment but neither states, nor contains the basis to infer, what declaratory relief is sought.

To warrant an injunction, Plaintiffs must demonstrate: (1) that they will suffer irreparable injury; (2) that remedies at law are inadequate; (3) that the balance of hardships between Plaintiffs and Defendants warrants an equitable remedy; and (4) that the public interest would not be disserved by a permanent injunction. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006) (further holding that "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards."); Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010) (vacating preliminary injunction for alleged copyright infringement and holding the eBay standard applies to preliminary, as well as permanent, injunctions).

In applying eBay, the Second Circuit explicitly stated that, in light of the Supreme Court's holding, traditional principles of equity are the presumptive standard for injunctions in any context. U.S.S.E.C. v. Citigroup Glob. Markets, Inc., 752 F.3d 285, 296 (2d Cir. 2014). See, e.g., World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 160–61 (2d Cir. 2012) (applying the eBay standard to a permanent injunction sought to remedy a breach of an exclusive distributorship agreement). Further, an injunction is "an extraordinary remedy" which is "never granted as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24, 129 S. Ct. 365, 376, 172 L. Ed. 2d 249 (2008) (reversing the Ninth Circuit's decision to uphold an injunction against sonar testing by the Navy and holding that courts must consider the effect of an injunction on each party and must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction"); Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 84-85 (2d Cir. 2004) (vacating a permanent injunction granted by the district as unwarranted even if the copyright infringement "was deliberate" and holding that the lower court abused its discretion in issuing the injunction).

Apart from the equitable principles that the Supreme Court enunciated in eBay, more than forty years earlier, the Court issued another decision that provides guidance on the issues now raised by Plaintiffs and demonstrates that even a definite Constitutional violation denying citizens of New York State their rights under the Constitution may need to be temporarily tolerated because the impracticalities of fashioning an injunctive remedy approximately four months before a scheduled election. WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S. Ct. 1418, 12 L. Ed. 2d 568 (1964). In WMCA, Inc. v. Lomenzo, supra, the Supreme Court held that New York State apportioned its legislative districts unconstitutionally by failing to apportion the districts on a population basis and, consequently, diluting the weight of certain people's votes. Despite the gravity of this holding, the Court stated:

> Since all members of both houses of the New York Legislature will be elected in November 1964, the court below, acting under equitable principles, must now determine whether, because of the imminence of that election and in order to give the New York Legislature an opportunity to fashion a constitutionally valid legislative apportionment plan, it would be desirable to permit the 1964 election of legislators to be conducted pursuant to the existing provisions, or whether under the circumstances the effectuation of

> appellants' right to a properly weighted voice in the election of state legislators should not be delayed beyond the 1964 election.

WMCA, Inc. v. Lomenzo, 377 U.S. at 655, 84 S. Ct. 1429. After the case was remanded, the District Court conducted a hearing and then issued a July 27, 1964 order declaring New York State's scheme of legislative apportionment to be "unconstitutional and void" but nonetheless directed that the November 3, 1964 "election of Assemblymen and Senators be conducted as … scheduled" under the invalidated apportionment system. See WMCA, Inc. v. Lomenzo, 238 F. Supp. 916, 918 (S.D.N.Y.), aff'd, 382 U.S. 4, 86 S. Ct. 24, 15 L. Ed. 2d 2 (1965), and vacated sub nom. Lomenzo v. WMCA, Inc, 384 U.S. 887, 86 S. Ct. 1907, 16 L. Ed. 2d 991 (1966) ("The scheme of legislative apportionment of the State of New York is hereby declared to be unconstitutional and void as being in conflict with the XIV Amendment of the Constitution of the United States; '3. * * * The 1964 election of Assemblymen and Senators shall be conducted as presently scheduled").

The foregoing Supreme Court cases, and their judicial progeny, make clear that Plaintiffs' request for injunctive relief should be denied, because: (1) a balancing of the equities, including Plaintiffs' dilatory acts and outright failures to act, as well as the hardships that would be visited upon Defendants were an injunction ordered, weighs heavily against this drastic remedy; and (2) the public interests would be greatly disserved.

Plaintiffs' dilatory acts and failures to act can be gleaned from a review of the timeline of events and legal deadlines read into the record and agreed to by Plaintiffs at the June 29, 2016 conference. The New York State Board of Elections conducted its hearing on the objections to Plaintiff Pidot's nominating petitions on May, 2, 2016 but, because the State Board had received nothing from Pidot, it held the record open for rebuttal to the objections until May 3, 2016. On May 4, 2016, the State Board of Elections met, invalidated Plaintiff Pidot's petitions and *noted that Pidot offered no defense of his nominating petitions*. This failure, alone, is sufficient to deny Plaintiffs an injunction.

*Equity aids the vigilant, not those who sleep on their rights*. Had Pidot bothered to defend his petitions before the State Board, the Board might not have invalidated his petitions. No one will ever be able to know because the only certain fact is that Pidot failed to avail himself of the opportunity afforded him to defend his petitions.

Two days after the State Board's decision, on May 6, 2016, Plaintiff Pidot filed for judicial review in State Court (Pidot v. Macedo, Index No. 3448/16) and the matter was made returnable before Justice Adams on May 11, 2015, three days before the deadline under the "Mover Act" for the mailing of military ballots. On May 11, 2016, Justice Adams dismissed Pidot's case because it was improperly commenced for serving the Petition before it was filed and failure to obtain commencement by signing from the NYS Supreme Court.

Remarkably, Pidot then waited almost one full moth, until June 9, 2016, to file his Notice of Appeal. Pidot may argue that his delay in seeking an appeal was because he chose to seek reconsideration by Justice Adams. However, Pidot was entitled to seek both an immediate,

3

expedited appeal, which under New York State Election law would have been accorded a priority, and simultaneously seek reconsideration.

Regardless of the logic of Pidot's choice to seek reconsideration, alone, and not pursue an expedited appeal, Pidot's actions even in seeking reconsideration were, once again, the cause of unnecessary delay. On May 19, 2016, Pidot served an Order to Show Cause, signed by Justice Adams; however, the Order to Show Cause had to be dismissed because Pidot failed to serve it properly and served incomplete papers. On May 21, 2016, the respondents in Pidot v. Macedo moved to dismiss the Order to Show for improper and incomplete service. In response to respondents' motion, Pidot obtained permission from the Court to re-serve the Order to Show Cause, but failed to seek an extension of the return date. Justice Adams granted Pidot permission to re-serve respondents and extended the return date to May 24, 2016, the Tuesday after Memorial Day. On June 7, 2016, Justice Adams rendered a decision adhering to his prior order.

As noted above, Pidot finally sought appellate review on June 9, 2016. On June 17, 2016, the Appellate Division reversed the lower court and sent the case back for a hearing. Justice Diamond then conducted a line-by-line hearing on the signatures in Pidot's nominating petitions and concluded in his June 24, 2016 decision that Pidot's petitions were valid, but denied him had obtained the requisite number of signatures for his petitions to be valid. However, Justice Diamond denied Pidot's requests to compel the State Board of Elections to place his name on the ballot and to reschedule the primary. As noted, respondents are pursuing an appeal of Justice Diamond's decision that Pidot's petitions are valid and, if successful, the appeal would render this case moot. Pidot, however, has not sought appellate review of Justice Diamond's denial of his request that the State Court order the primary rescheduled. In sum, it was Pidot's dilatory acts and failures to act, which created the current circumstances, i.e., a judicial validation of Pidot's nominating petitions, that is currently the subject of appellate review, which came at such a late date that it is now impossible for a primary to be held.

The hardships to Martins because of the current situation are substantial. As noted above, Martin has now, and will continue to be, hamstrung in his efforts to campaign for Congress. The only true beneficiary of this situation is the Democratic nominee for Congress who now has a distinct advantage over his Republican opponent. Consequently, Plaintiff Pidot's delays and the hardships that are currently being visited upon Defendant Martins, both militate against this Court issuing an injunction.

In addition, the public interests would be greatly disserved by the drastic remedy sought by Pidot. The public has been given no notice of a possible late summer Republican Congressional primary. To the contrary, most Republican voters who were likely to cast a ballot in a Republican primary were advised that there would be no primary. In addition, the proposed late summer timing of a primary would be so unusual as to discourage participation by the electorate.

In sum, Plaintiffs have failed to meet the standard for obtaining the drastic remedy of an injunction. The balancing of the hardships to Defendant Martins, created by a situation entirely of Pidot's making, and Pidot's dilatory approach to the administrative and judicial processes weigh heavily against the relief Pidot seeks. Combined with the disservice to the public that would result from an injunction, it is clear that the Court must not use its equitable power to issue an injunction

directing that a Republican primary be held later this summer. See WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S. Ct. 1418, 12 L. Ed. 2d 568 (1964) (remedying even a certain and definite denial of Constitutional rights – which Plaintiffs here have alleged but have not demonstrated – must sometimes be delayed due to other equitable considerations, including the practical issues surrounding the timing of elections).

For the foregoing reasons, Plaintiffs' requests for an injunction must be denied and the Complaint dismissed.

Dated: Seaford, New York
July 5, 2016

                              LAW OFFICES OF JOSEPH NOCELLA

                              By: _____/s/_____
                                  Joseph Nocella (JN3785)
                              3972 Franklin Ave.
                              Seaford, NY 11783
                              Tel: 516-537-2540
                              Email: josephnocellajr@gmail.com
                              Attorneys for Defendant JACK MARTINS

TO: All Counsel of Record (Via ECF)